UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHRISTOPHER TROWBRIDGE, MICHAEL
TORRES, RONNIE PAGAN, and JUAN ORTIZ,
individually and on behalf of a class of all other
similarly situated,

                                  16-CV-3455 (GBD)

                      Plaintiffs,

               -against-

ANDREW CUOMO, in his official capacity as the
Governor of the State of New York, JANET
DIFIORE, in her official capacity as Chief Judge of
the State of New York and Chief Judicial Officer of
the Unified Court System, and LAWRENCE
MARKS, in his official capacity as Chief
Administrative Judge of the Unified Court System,

                      Defendants.
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

                          ERIC T. SCHNEIDERMAN
                          Attorney General of the State of New York
                          *Attorney for Defendants*
                          120 Broadway, 24th Floor
                          New York, New York 10271
                          Tel.: (212) 416-6035

ALISSA S. WRIGHT
MICHELLE LAMBERT
Assistant Attorneys General
   of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

STANDARD OF REVIEW .......................................................................................... 5

     Fed. R. Civ. P. 12(b)(1) ........................................................................................ 5
     Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

ARGUMENT ............................................................................................................... 6

  I.     PLAINTIFFS LACK STANDING TO BRING THIS ACTION ................................. 6

       A.  Plaintiffs' Speculative Allegations of Potential Future Harm Are Insufficient
           to Confer Standing ..................................................................................... 8

       B.  Plaintiffs Fail to Allege an "Imminent" Injury Because They Cannot Show a
           Credible Fear of Enforcement .................................................................... 11

  II.    FEDERALISM AND COMITY PRINCIPLES MANDATE THE DISMISSAL
       OF THIS ACTION ..................................................................................... 13

       A.  This Court Should Abstain From Interfering with State Criminal Court
           Operations ................................................................................................. 13

       B.  Abstention is Warranted on Plaintiffs' Claim for Declaratory Judgment ............. 16

       C.  Abstention Is Appropriate Because Plaintiffs Have the Ability to Challenge
           Delay in the State Court Proceeding ........................................................... 18

  III.   PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS ..................................... 20

  IV.   THE GOVERNOR IS NOT A NECESSARY OR PROPER PARTY ...................... 25

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

Ad Hoc Comm. on Judicial Admin. v. Massachusetts,
  488 F.2d 1241 (1st Cir. 1973) ................................................................................ 15

Albright v. Oliver,
  510 U.S. 266 (1994) ............................................................................................ 24

Anderson v. Regan,
  53 N.Y.2d 356 (1981) ......................................................................................... 16

APWU v. Potter,
  343 F.3d 619 (2d Cir. 2003) ................................................................................. 6

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ............................................................................................. 6

Babbitt v. UFW Nat'l Union,
  442 U.S. 289 (1979) ...................................................................................... 11, 12

Barker v. Wingo,
  407 U.S. 514 (1972) ................................................................................ 19, 21, 23

Bd. of Trs. of Univ. of Ala, v. Garrett,
  531 U.S. 356 (2001) ........................................................................................... 21

Bell Atl. Corp v. Twombly,
  550 U.S. 544 (2007) ............................................................................................. 6

Calderon v. Ashmus,
  523 U.S. 740 (1998) ........................................................................................... 18

Carver v. City of New York,
  621 F.3d 221 (2d Cir. 2010) ................................................................................. 7

Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco
  Managed Care, L.L.C.,
  433 F.3d 181 (2d Cir. 2005) ............................................................................... 11

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002) ................................................................................. 4

City of Los Angeles v. Lyons,
  461 U.S. 95 (1983) ....................................................................................... 12, 13

Clapper v. Amnesty Int'l USA,
    133 S. Ct. 1138 (2013)................................................................................................7, 8, 10

Colorado River Water Conservation District v. United States,
    424 U.S. 800 (1976).........................................................................................................18

Davis v. Lansing,
    851 F.2d 72 (2d Cir. 1988)..........................................................................................13, 14

Doggett v. United States,
    505 U.S. 647 (1992).........................................................................................................23

Etuk v. Slattery,
    936 F.2d 1433 (2d Cir. 1991).............................................................................................7

Ex Parte Young,
    209 U.S. 123 (1908).........................................................................................................16

Goonewardena v. New York,
    475 F. Supp. 2d 310 (S.D.N.Y. 2007)..............................................................................21

Green v. Mansour,
    474 U.S. 64 (1985)...........................................................................................................16

Hansel v. Town Court for Town of Springfield,
    56 F.3d 391 (2d Cir. 1995)...............................................................................................18

Hedges v. Obama,
    724 F.3d 170 (2d Cir. 2013).............................................................................................12

Jaghory v. N.Y. State Dep't of Educ.,
    131 F.3d 326 (2d Cir. 1997)...............................................................................................6

Kaufman v. Kaye,
    466 F.3d 83 (2d Cir. 2006)..........................................................................................15, 20

Kimel v. Fla. Bd. of Regents,
    528 U.S. 62 (2000)...........................................................................................................21

Larabee v. Governor of the State of N.Y.,
    121 A.D.3d 162 (1st Dep't 2014), aff'd, 2016 N.Y. LEXIS 1101 (May 10, 2016) ...............16

Luckey v. Miller,
    976 F.2d 673 (11th Cir. 1992) .........................................................................................15

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)......................................................................................................7, 13

Mahon v. Ticor Title Ins. Co.,
   683 F.3d 59 (2d Cir. 2012)...............................................................................6

Makarova v. United States,
   201 F.3d 110 (2d Cir. 2000)..............................................................................5

Matter of Maron v. Silver,
   14 N.Y.3d 230 (2010) ......................................................................................16

Miller v. Silbermann,
   951 F. Supp. 485 (S.D.N.Y. 1997) ..................................................................20

N.Y.S. Motor Truck Ass'n v. Pataki,
   2004 U.S. Dist. LEXIS 25519 (S.D.N.Y. Dec. 17, 2004) ...............................25

New York Times Co. v. Gonzales,
   459 F.3d 160 (2d Cir. 2006)......................................................................17, 18

Nolan v. Cuomo,
   2013 U.S. Dist. LEXIS 6680 (E.D.N.Y. Jan. 16, 2013) .................................25

O'Shea v. Littleton,
   414 U.S. 488 (1974)..............................................................10, 11, 12, 13, 14, 16

People v. Blakely,
   34 N.Y.2d 311 (1974) ......................................................................................19

People v. Johnson,
   38 N.Y.2d 271 (1975) ......................................................................................19

People v. Kendzia,
   64 N.Y.2d 331 (1985) ......................................................................................20

People v. Staley,
   41 N.Y.2d 789 (1977) ......................................................................................20

People v. Taranovich,
   37 N.Y.2d 442 (1975) ......................................................................................19

People v. White,
   32 N.Y.2d 393 (1973) ......................................................................................19

Public Service Comm'n v. Wycoff Co., Inc.,
   344 U.S. 237 (1952)..................................................................................17, 18

Quern v. Jordan,
   440 U.S. 332 (1979)........................................................................................21

Rayborn v. Scully,
    858 F.2d 84 (2d Cir. 1988)......................................................................................23

Simon v. Eastern Ky. Welfare Rights Org.,
    426 U.S. 26 (1976)..................................................................................................11

Smith v. Maher,
    468 F. Supp. 2d 466 (W.D.N.Y. 2006) ...................................................................19

Susan B. Anthony List v. Driehaus,
    134 S. Ct. 2334 (2014)........................................................................................7, 11

Trotman v. Palisades Interstate Park Comm'n,
    557 F.2d 35 (2d Cir. 1977)......................................................................................21

U.L. v. N.Y. State Assembly,
    2014 U.S. Dist. LEXIS 11215 (S.D.N.Y. Jan. 29, 2014), aff'd 592 Fed. Appx. 40 (2d
    Cir. 2015), cert. denied, 136 S. Ct. 153 (2015).......................................................21

United States v. Decastro,
    682 F.3d 160 (2d Cir. 2012).....................................................................................8

United States v. Jones,
    129 F.3d 718 (2d Cir. 1997)....................................................................................23

Velez v. Levy,
    401 F.3d 75 (2d Cir. 2005)......................................................................................25

W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,
    549 F.3d 100 (2d Cir. 2008)..................................................................................6, 7

Wallace v. Kern,
    481 F.2d 621 (2d Cir. 1973)....................................................................................15

Wallace v. Kern,
    499 F.2d 1345 (2d Cir. 1974); cert. den'd, 420 U.S. 947 (1975)......................15, 21

Wallace v. Kern,
    520 F.2d 400 (2d Cir. 1975)..........................................................................11, 14, 22

Warth v. Seldin,
    422 U.S. 490 (1975)........................................................................................7, 11, 12

Whitmore v. Arkansas,
    495 U.S. 149 (1990)..................................................................................................8

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995)................................................................................................17

Younger v. Harris,
    401 U.S. 3 (1971)........................................................................................13, 14, 15

**Constitutions**

Sixth Amendment .......................................................................................19, 21, 23

Eleventh Amendment....................................................................................................21

Fourteenth Amendment ................................................................................................15

U.S. Constitution
    Article III ....................................................................................................... 2, 6-8

New York Constitution
    Article VII, § 7 ..............................................................................................16

**Federal Statutes**

28 U.S.C. § 2201 (Declaratory Judgment Act)..........................................................17

42 U.S.C. § 1983 .......................................................................................................21

**Federal Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................1, 5

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 6

**State Statutes**

New York State Criminal Procedure Law ("CPL")
    § 30.20........................................................................................................19
    § 30.30........................................................................................................20
    § 170.55........................................................................................................24
    § 210.20........................................................................................................19
    § 440.10........................................................................................................19
    § 450.15........................................................................................................19

New York Civil Rights Law
    § 12..............................................................................................................19

**Miscellaneous Authorities**

https://www.nycourts.gov/excellence-initiative ...........................................................5

https://www.nycourts.gov/publications/pdfs/BronxReport11-09.pdf...........................4

https://www.nycourts.gov/whatsnew/pdf/investiture-remarks.pdf................................5

Defendants Andrew Cuomo, in his official capacity as Governor of the State of New York; Janet DiFiore, in her official capacity as the Chief Judge of the New York State Court of Appeals, Chief Judicial Officer of the New York State Unified Court System ("UCS"), and Chair of the Administrative Board of the New York Courts; and Lawrence Marks, in his official capacity as Chief Administrator and Chief Administrative Judge of the UCS  (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' complaint, dated May 10, 2016 (Dkt. No.1) ("Compl."), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs, four individuals who purport to sue on behalf of a putative "future" class, bring this action to challenge the constitutionality of the processing of misdemeanor charges in New York City Criminal Court, Bronx County ("Bronx Criminal Court") under the Sixth and Fourteenth Amendments to the United States Constitution.  Notably, none of the Plaintiffs currently have cases pending in Bronx Criminal Court, nor do they allege a concrete threat of imminent prosecution.  Nevertheless, they seek to challenge potential delays that may occur with respect to each and every future criminal defendant facing misdemeanor charges in Bronx Criminal Court.  Plaintiffs ask this Court to indiscriminately evaluate the processing of misdemeanor cases on a broad, wholesale level, and ignore the individual circumstances of each case.  They ask this federal court to interject itself into the administration of New York's state court system, despite the fact that such intrusion has far-reaching consequences and defies well-settled comity and federalism principles.  As discussed herein, dismissal of Plaintiffs' claims is fully warranted on numerous grounds.

1

First, Plaintiffs lack standing.  None of the Plaintiffs are currently facing misdemeanor charges in Bronx Criminal Court, and thus none of Plaintiffs have suffered an injury-in-fact as required to confer standing.  Plaintiffs' allegations of potential future harm are wholly speculative.  Therefore, there is no "case or controversy" as required by Article III of the United States Constitution, and Plaintiffs' complaint must be dismissed.  See infra, Point I.

Second, well-established precedent dictates that abstention is required when a federal court is asked to intrude into matters more properly left to the State, such as the management of the state court system that is at issue here.  Given the availability of other avenues of review for purported violations of speedy trial rights at the state level, and the impropriety and unmanageability of federal oversight of state court matters, abstention is required in this instance.  See infra, Point II.

Third, even if this Court reaches the merits, the complaint fails to state a claim on which relief can be granted and would still require dismissal.  The law is clear that allegations of violations of speedy trial rights must be reviewed on a case-by-case basis.  Multiple factors must be considered including the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.  Here, two of the named Plaintiffs do not assert that any past prosecutions resulted in any delay, and thus they cannot state a claim for a violation of due process or the right to a speedy trial.  The remaining two Plaintiffs do not adequately assert the reason that their past prosecutions were delayed, and they fail to allege that they asserted their right in the state court proceedings, or that they were prejudiced by the delay.  Therefore, they fail to state cognizable claims.  See infra, Point III.

Fourth, the Governor is not a proper party to this action.  Plaintiffs do not allege that the Governor has control over the administration of misdemeanor cases in Bronx Criminal Court, and, therefore, all claims against him should be dismissed.  See infra, Point IV.

Accordingly, the complaint should be dismissed, in its entirety, with prejudice.

## STATEMENT OF FACTS

Bronx Criminal Court is an extremely busy court that handles and resolves a large volume of misdemeanor criminal cases each year.  According to the Complaint, in 2014, the court conducted 50,703 misdemeanor arraignments.  Compl. ¶ 88.  At the end of that year, 11,523 misdemeanor cases remained pending, meaning that over 39,000 misdemeanors were resolved.  Id.

A misdemeanor criminal case may proceed through various stages.  As Plaintiffs describe in their complaint, misdemeanor prosecutions begin with an arraignment.  Id. ¶ 32.  At each arraignment, defense counsel is assigned (if none has already been retained), the criminal defendant is informed of the charges against him or her, and a state court judge makes a bail determination.  Id.  Many times, criminal defendants plead guilty at their arraignments.  Id.  If a case is not resolved at arraignment, it proceeds to a calendar part which handles motion practice and other pretrial matters, including guilty pleas.  Id. ¶ 33.  While as a general rule, a criminal defendant is required to appear for his or her court dates, a judge may excuse a person charged with a misdemeanor from personally appearing in court.  Id. ¶ 36.

Once all pretrial issues have been addressed, the judge asks if the parties are ready for trial.  Id. ¶ 34.  If both sides are ready, the judge ascertains whether any trial parts are available.  Id.  If they are not, the case is adjourned.  Id.  If both sides are ready for trial, and a trial part is available, the case is sent out for trial.  Id. ¶¶ 34-35.  Notably, the complaint is devoid of

3

allegations that any of the four Plaintiffs currently have pending misdemeanor criminal cases at any stage of this judicial process before the Bronx Criminal Court.  Id. ¶¶ 1-142.

The UCS has been actively engaged in implementing policies to improve the processing of criminal cases in Bronx County. In 2004, "[t]he court system undertook a bold experiment . . . [b]y merging the operation of the Bronx County Criminal Court into the Criminal Term of the Bronx County Supreme Court."  The Bronx Criminal Division:  Merger After Five Years (2009) ("Merger Report"), p. 3, available at https://www.nycourts.gov/publications/pdfs/ BronxReport11-09.pdf.[1]  In doing so, two distinct courts of criminal jurisdiction were merged into an integrated Bronx Criminal Division, where for the first time, misdemeanors and felonies could be resolved in the same court, "and the full panoply of judicial and administrative resources could be brought to bear on burgeoning caseloads."  Id.  While the merger initially achieved one of its primary goals – reduction of the misdemeanor caseload – the misdemeanor backlog eventually grew back to pre-merger levels.  Id. at p. 9.  However, while misdemeanor filings in the Bronx grew by 35% from 2004 to 2009 during the five-year pendency of the merger, the court was able to maintain the number of pending misdemeanors at pre-merger levels.  Id.  After five years, the court system engaged in a thorough review of the effects of the merger, identifying where it succeeded and where it did not, and issued further recommendations to improve the processing of criminal cases in the Bronx.  Id.

Further, in 2008, the judiciary issued Standards and Goals Guidelines for the Disposition of Criminal Cases.  Compl. ¶ 90.  This administrative tool was developed "to assist the courts at every level in monitoring the progress of cases through the criminal court system."  Id.  The guidelines provide the courts with the opportunity to evaluate the processing time frames for

---

[1]  The Court may properly consider this document on this motion to dismiss because it is referenced in the complaint (p.3, n.3).  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

cases and analyze where improvements have been made or can be made.  Additionally, in 2014, the UCS created the Bronx Misdemeanor Standards and Goals Part, a specialized courtroom dedicated to processing the oldest misdemeanors in Bronx Criminal Court.  Id. ¶ 94.

In furtherance of these efforts to continually improve the court system, on February 8, 2016, approximately one month after her appointment, Chief Judge DiFiore announced the Excellence Initiative, which includes a detailed and comprehensive evaluation of current processes and procedures to determine what is working well and what needs to improve in the UCS.  See https://www.nycourts.gov/excellence-initiative; https://www.nycourts.gov/whatsnew/pdf/investiture-remarks.pdf.  In launching the Excellence Initiative, Chief Judge DiFiore specifically noted her commitment to investigating the causes of backlogs and delays, and stated that the court system "will analyze the case management processes in place in each court and the way our courts are administered to determine if they are working well - and then we will design ways to tackle the backlogs and fix the problems."  Id.  Despite this ongoing commitment and these continuing actions and efforts, Plaintiffs bring this action seeking to have this federal court intrude in these state matters, investigate the Bronx criminal court system, and issue judgment and equitable relief with respect to the operation of that system.  Such interference is improper.

## STANDARD OF REVIEW

### Fed. R. Civ. P. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff opposing a Rule 12(b)(1) motion for lack of subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists."  Id.  "[J]urisdiction must be shown affirmatively,

5

and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).

**Fed. R. Civ. P. 12(b)(6)**

In considering the legal sufficiency of a complaint pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). The Court, however, is not required to accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard demands more than a "sheer possibility that a defendant has acted unlawfully." Id. A complaint that merely alleges facts "consistent with" or "compatible with" liability fails to state a cognizable claim. Twombly, 550 U.S. at 557; Iqbal, 556 U.S. at 680.

## ARGUMENT

### I.   PLAINTIFFS LACK STANDING TO BRING THIS ACTION.

Plaintiffs do not have standing to bring their claims in this Court. Article III of the United States Constitution limits the subject-matter jurisdiction of the federal courts to "cases" and "controversies." U.S. Const., art. III, § 2; Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in

original).  Standing is "the threshold question in every federal case."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  For the Court to maintain jurisdiction, it must exist "throughout the course of the proceedings."  Etuk v. Slattery, 936 F.2d 1433, 1441 (2d Cir. 1991).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013).  To satisfy the "irreducible constitutional minimum of standing," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), Plaintiffs must demonstrate three elements: "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief."  W.R. Huff, 549 F.3d at 106-07 (citing Lujan, 504 U.S. at 560-61).  The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014) (citing Warth, 422 U. S. at 498.

Plaintiffs have the burden of establishing these essential Article III requirements for each plaintiff, as against each defendant, for each claim asserted, and for each type of relief sought. Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010).  Nevertheless, Plaintiffs purport to bring claims on behalf of themselves and "all persons who will be prosecuted in Bronx Criminal Court with a misdemeanor or lesser offense as the top charge in their complaint," even though standing is entirely lacking.

**A.** **Plaintiffs' Speculative Allegations of Potential Future Harm Are Insufficient to Confer Standing.**

Plaintiffs bring this action challenging the administration of misdemeanor prosecutions in Bronx Criminal Court.  They claim that there are excessive delays in the processing of misdemeanor cases, resulting in violations of the rights of those being prosecuted.  Compl. ¶¶ 138-142.  However, not one of the named plaintiffs is currently being prosecuted for a misdemeanor in Bronx Criminal Court, and thus not one of the named plaintiffs is currently experiencing any delay in the processing of his case.  There is not a single allegation connecting any of the named plaintiffs to a current, pending, delayed misdemeanor case in the Bronx.  Compl. ¶¶ 1-142.  Therefore, there is no "case or controversy," and Plaintiffs lack standing.

Plaintiffs attempt to remedy this fatal deficiency by asserting that they are "likely to be arrested, prosecuted, and subjected to unconstitutional Court Delay in Bronx Criminal Court."  Compl. ¶ 72.  Yet that is precisely the sort of "highly speculative fear" that does not meet the requirements of Article III.  See Clapper, 133 S. Ct. at 1148.  The Supreme Court has made clear that "threatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of possible future injury are not sufficient."  Id. at 1147 (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)) (emphasis in Clapper); see also Decastro, 682 F.3d at 164.  None of the Plaintiffs meet that strict standard.  In fact, all four named plaintiffs rely on hypothetical assertions of future arrests, prosecutions, and delays, none of which are "certainly impending," and all of which are based purely on conjecture and speculation.  Compl. ¶¶ 63-86.

Specifically, Plaintiff Ronnie Pagan relies on an allegation that because he "continues to visit his girlfriend and their children in a Bronx NYCHA [New York City Housing Authority] residence, he will likely be arrested and subjected to unconstitutional Court Delay in Bronx Criminal Court again."  Compl. ¶ 79.  Plaintiff Juan Ortiz claims that he frequently shoplifts as a

result of certain medication he takes, and "[f]or the same reasons that Mr. Ortiz was arrested and prosecuted 14 times, he will likely be arrested and prosecuted in the Bronx again and subjected to unconstitutional Court Delay in Bronx Criminal Court." Compl. ¶ 83. Notably, he does not claim that he suffered any delays in connection with his prior prosecutions. Compl. ¶¶ 81-83.

Similarly, Plaintiff Christopher Trowbridge claims that he has been prosecuted in Bronx Criminal Court at least six times since 2008 due to heroin addiction, Compl. ¶ 85, but he does not allege that any of those prosecutions resulted in excessive, much less unconstitutional, delays, Compl. ¶¶ 84-86. Yet he claims that due to his addiction he "will likely be arrested and prosecuted in the Bronx again and subjected to unconstitutional Court Delay in Bronx Criminal Court." Compl. ¶ 86. The fourth plaintiff, Michael Torres, claims that he "is likely to be arrested, prosecuted, and subjected to unconstitutional Court Delay in Bronx Criminal Court" because his job requires him to carry a knife to and from work, and although legal, he was once arrested and prosecuted for possessing a knife in the Bronx in 2013. Compl. ¶ 72. Mr. Torres also alleges that he is "likely to be arrested and prosecuted for unlicensed driving as a result of a license suspension he received in Florida and the subsequent suspension of his privilege to drive in New York." Compl. ¶ 73. Mr. Torres claims that he continues to drive, even though his license has been suspended for the past six years, and he has been prosecuted for unlicensed driving on at least two occasions. Compl. ¶ 73.

Such conjecture is insufficient to confer standing on any plaintiff. Plaintiffs' theory of standing rests on multiple speculative prospects: (1) that Plaintiffs may violate valid criminal laws in the future or face arrest in Bronx County; (2) that they may be charged with misdemeanors for such hypothetical arrests; (3) that they may be prosecuted in Bronx Criminal Court for these hypothetical arrests charging hypothetical misdemeanor crimes; (4) that such

hypothetical prosecutions <u>may</u> be delayed to such an extent as to violate their constitutional rights; and (5) that Plaintiff's theoretical misdemeanor criminal cases in Bronx Criminal Court <u>may</u> be delayed because of the judicial process.  If any of these events do not occur in the way contemplated by Plaintiffs, their alleged basis for standing evaporates.  This theory "relies on a highly attenuated chain of possibilities" and "does not satisfy the requirement that threatened injury must be certainly impending."  <u>See</u> <u>Clapper</u>, 133 S.Ct. at 1148.

The United States Supreme Court has explicitly held that such a theoretical sequence of events based on conjecture is insufficient to confer standing.  In <u>O'Shea v. Littleton</u>, the plaintiffs alleged a pattern of racial discrimination in various aspects of the criminal justice system, including bond-setting, sentencing, and jury-fee assessments. 414 U.S. 488, 491-92 (1974).  Similar to Plaintiffs here, the <u>O'Shea</u> plaintiffs were unable to demonstrate standing, because the "the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners."  <u>Id.</u> at 496.  The Supreme Court stated:

> Apparently, the proposition is that <u>if</u> respondents proceed to violate an unchallenged law and <u>if</u> they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture.

<u>Id.</u>  That logic is equally applicable here, where Plaintiffs rely on a series of highly tenuous assumptions concerning "valid" laws, their enforcement, and hypothetical prosecutions, which are insufficient to confer standing.

The fact that Plaintiffs bring this action as a putative class action does not salvage their lack of standing.  Named plaintiffs are required to plead facts showing that they personally suffered an injury-in-fact regardless of whether they bring their action individually or on behalf

of a putative class.  "'[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class.'" Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005) (quoting O'Shea, 414 U.S. at 494).  "'[T]he named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Id. (quoting Warth, 422 U.S. at 502); see also  Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing . . . .").[2]  Therefore, because Plaintiffs have not suffered an injury-in-fact, they lack standing and the complaint should be dismissed.

### B.  Plaintiffs Fail to Allege an "Imminent" Injury Because They Cannot Show a Credible Fear of Enforcement.

Similarly, Plaintiffs cannot overcome their lack of standing by attempting to recast their claims as a "pre-enforcement" challenge.  A plaintiff can only bring a pre-enforcement suit when he "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  Babbitt v. UFW Nat'l Union, 442 U.S. 289, 298 (1979).  A plaintiff only has standing to make a pre-enforcement challenge "under circumstances that render the threatened enforcement sufficiently imminent," Susan B. Anthony List, 134 S.Ct. at 2342, and "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative."  Babbitt, 442 U.S. at 302.  A plaintiff "must demonstrate a realistic

---

[2] Further, the determination of whether an individual's constitutional speedy trial rights have been violated is fact-specific and cannot be adjudicated as a class action.  See infra, Point III (citing Wallace v. Kern, 520 F.2d 400, 405-06 (2d Cir. 1975)).

danger of sustaining a direct injury as a result of the statute's operation of enforcement." Id. at 298. The threat of imminent injury must be "distinct and palpable," Warth, 422 U.S. at 501, not merely "abstract," O'Shea, 414 U.S. at 494.

Plaintiffs' speculative allegations concerning their hypothetical arrests and theoretical prosecutions cannot support a pre-enforcement challenge. As an initial matter, Plaintiffs' assertions do not demonstrate an "imminent" arrest, much less an imminent prosecution or excessively delayed prosecution. Plaintiff's fear of arrest, even if well-founded, is not sufficiently certain or forthcoming to establish standing.

Further, the fundamental principle of "fear based" standing is that a plaintiff should not be required to breach the very statute or provision that is being challenged prior to bringing suit for standing to exist. See Hedges v. Obama, 724 F.3d 170, 188-89 (2d Cir. 2013). But here, Plaintiffs do not challenge a particular statute or provision. Indeed, they do not challenge any specific law, or even a concrete practice. Instead, Plaintiffs challenge a general "process" that affects individuals in different ways, and which may or may not occur. That type of speculation, and challenge to an individualized situation, does not fall under the narrow contours of what is permissible as a pre-enforcement action. Lyons, 461 U.S. at 105-106 ("[i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion" that the challenged action "always" occurs or that there exists an official policy of such action). Here, Plaintiffs cannot reasonably argue that all misdemeanor cases presently before the Bronx Criminal Court are delayed, or that the court system incorporates a practice of delay for all cases before the

tribunal to be deemed an official policy for such action.  Thus, any alleged fear of arrest[3] is not synonymous with standing for these Plaintiffs.

Finally, the fact that some Plaintiffs allege that they have been arrested and prosecuted in Bronx County in the past does not salvage their claims.  "'Past exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" Lyons, 461 U.S. at 102 (quoting O'Shea, 414 U.S. at 495-96).  And a profession of "'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require." See Lujan, 504 U.S. at 564.  Therefore, Plaintiffs lack standing to bring this lawsuit, and their claims should be dismissed.

## II.   FEDERALISM AND COMITY PRINCIPLES MANDATE THE DISMISSAL OF THIS ACTION.

### A.   This Court Should Abstain From Interfering with State Criminal Court Operations.

Plaintiffs' complaint also fails because it asks this Court to violate principles of federalism and comity, warranting abstention.  Plaintiffs seek declaratory judgment and equitable relief aimed at controlling state court criminal proceedings that may potentially occur in the future.  This is the type of interference that is prohibited by Younger v. Harris, 401 U.S. 3 (1971), and federalism principles.

Under the doctrine set forth in Younger and its progeny, a federal court must abstain from intervening in ongoing state criminal proceedings when adequate state relief is available.  See 401 U.S. at 54; see also Davis v. Lansing, 851 F.2d 72, 76 (2d Cir. 1988) ("[I]nterference in

---

[3]  Plaintiffs' fear of arrest also does not confer standing because the named Defendants do not have any control over whether or not Plaintiffs are arrested or prosecuted with misdemeanors.

pending [state court criminal] proceedings is inappropriate unless state law clearly bars the interposition of . . . federal constitutional claims." (quotations, alterations and citations omitted)).  While Plaintiffs attempt to avoid this prohibition by purporting to bring claims on behalf of putative future criminal defendants, as opposed to individuals currently facing misdemeanor charges, the underlying abstention principles still apply.[4]

The United States Supreme Court has expressly prohibited intrusion by the federal district courts into the operations of state court systems.  As previously noted, in O'Shea, the plaintiffs alleged a pattern of racial discrimination in various aspects of the criminal justice system, including bond-setting, sentencing, and jury-fee assessments.  414 U.S. at 491-92.  The Supreme Court held that abstention was warranted, notwithstanding the serious nature of the allegations, because the plaintiffs were seeking "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials."  Id. at 500.  That would require "nothing less than an ongoing federal audit of state criminal proceedings" that would be inconsistent with Younger.  Id.  Given the availability of other avenues of review (including direct appeal) to correct any alleged constitutional violations, and the "abrasive and unmanageable intercession which the injunctive relief they seek would represent," the Supreme Court concluded that abstention was required.  Id. at 504.

The Second Circuit has remained committed to preventing the intrusion of federal courts into the state court system, even where plaintiffs raise constitutional challenges.  In a series of decisions, the Second Circuit invalidated a district court's issuance of an injunction providing for new bail hearing procedures, because such relief would require the type of federal court surveillance forbidden by O'Shea and Younger.  See Wallace v. Kern, 520 F.2d 400, 405-06 (2d

---

[4] Even if this action was brought by Plaintiffs with current pending cases in Bronx Criminal Court, the claims would be expressly barred by Younger.

Cir. 1975); <u>Wallace v. Kern</u>, 499 F.2d 1345, 1348 (2d Cir. 1974); <u>cert. den'd</u>, 420 U.S. 947

(1975); <u>Wallace v. Kern</u>, 481 F.2d 621, 622 (2d Cir. 1973).  The Court of Appeals stated:  "This

is not the proper business of the federal courts, which have no supervisory authority over the

state courts and have no power to establish rules of practice for the state courts."  <u>Wallace</u>, 499

F.2d at 1351.

      More recently, in <u>Kaufman v. Kaye</u>, 466 F.3d 83 (2d Cir. 2006), the Second Circuit held

that a federal district court must abstain from hearing a lawsuit seeking, <u>inter alia</u>, a declaration

that the system for assigning cases in the Second Department of the Appellate Division violates

the Due Process and Equal Protection Clauses of the Fourteenth Amendment and an injunction

requiring the New York State legislature to establish a new system of assigning appeals in the

Second Department.  The Second Circuit held that abstention was required because the relief

sought "would be . . . intrusive in the administration of the New York court system."  <u>Kaufman</u>,

466 F.3d at 86.  The Second Circuit expressly noted that "under the principle known as comity a

federal district court has no power to intervene in the internal procedures of the state courts."  <u>Id.</u>

at 86-87 (quotation and citation omitted).  The Court of Appeals further held that "the federal

courts cannot 'legislate and engraft new procedures upon existing'" state practices, and that such

interference by the federal court "would violate principles of comity established in <u>Younger</u>."

<u>Id.</u> (quotation omitted); <u>see also</u> <u>Luckey v. Miller</u>, 976 F.2d 673, 676-79 (11th Cir. 1992)

(holding that the federal courts must abstain from hearing claims that sought structural reforms

of Georgia's indigent defense system); <u>Ad Hoc Comm. on Judicial Admin. v. Massachusetts</u>,

488 F.2d 1241, 1245-46 (1st Cir. 1973) (affirming dismissal of class action challenging court

delays because "[i]n this nation, the financing and, to an important extent, the organization of the

judicial branches, federal and state, have been left to the people, through their legislature . . . it

would be both unprecedented and unseemly for a federal judge to attempt a reordering of state priorities").

Here, Plaintiffs are seeking precisely the type of oversight and intrusion into the state court system that is prohibited by binding precedent.  Plaintiffs assert a number of complaints concerning the processing of misdemeanor cases in Bronx Criminal Court, none of which this Court has the power to address.[5]  While Plaintiffs purport to seek "appropriate equitable relief" in this action, any equitable relief granted by this Court would constitute a gross intrusion into state criminal court functions.  Such "intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint" required by the United States Supreme Court.  O'Shea, 414 U.S. at 502.  This Court should accordingly abstain from hearing Plaintiffs' challenges to state court criminal proceedings, which are properly left to the State.

### B.  Abstention is Warranted on Plaintiffs' Claim for Declaratory Judgment.

Plaintiffs' claim for a declaratory judgment is similarly unwarranted.  Any request for retrospective declaratory relief concerning past misdemeanor cases in Bronx Criminal Court is barred by sovereign immunity.  See Ex Parte Young, 209 U.S. 123 (1908); see also Green v. Mansour, 474 U.S. 64, 68 (1985).  Even if Plaintiffs purport to challenge allegedly "ongoing violations" in an attempt to obtain prospective declaratory relief, as required under Ex Parte

---

[5]  To the extent Plaintiffs challenge the funding of the state court system, such a claim is non-justiciable as this Court does not have the authority to issue any remedy with respect to state funding, nor do any of the Defendants have the authority to unilaterally alter New York State's budget.  Plaintiffs seemingly recognize this, as they do not seek monetary damages, yet their complaint contains allegations concerning allegedly inadequate funding for the court system.  Compl. ¶¶ 118-19, 123-24; but see Anderson v. Regan, 53 N.Y.2d 356 (1981) (noting that section 7 of article VII of the New York Constitution "requires that there be a specific legislative appropriation each time that moneys in the State treasury are spent").  Nor can this Court order or direct the appropriation of certain funds; Larabee v. Governor of the State of N.Y., 121 A.D.3d 162, 170 (1st Dep't 2014), aff'd, 2016 N.Y. LEXIS 1101 (May 10, 2016) ("[T]he judiciary, as a coequal branch of government, simply cannot constitutionally tell the legislature to appropriate or pay any amount of money for any specific purpose. . . . [A]ny mandate to pay those sums would encroach upon the budgeting powers of the Legislature and thus would violate the Separation of Powers Doctrine.") (citing Matter of Maron v. Silver, 14 N.Y.3d 230 (2010)).

Young, Plaintiffs do not allege facts showing that they have standing to bring such claims, given that any "ongoing violation" is not currently harming Plaintiffs.  See supra, Point I.

Nonetheless, even if this Court had jurisdiction to hear Plaintiffs' claims, this Court has discretion to abstain from exercising jurisdiction over a declaratory action that it would otherwise be empowered to hear.  See Declaratory Judgment Act, 28 U.S.C. § 2201(a); see also Wilton v. Seven Falls Co., 515 U.S. 277, 282-83 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites").  The Second Circuit has identified five factors to be considered before a court entertains a declaratory judgment action:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

New York Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006).

These factors weigh against the exercise of jurisdiction in this case.  The requested judgment would neither "serve a useful purpose in clarifying or settling the legal issues involved" nor "finalize the controversy."  As discussed below, speedy trial rights are analyzed on a case-by-case basis.  See infra, Point III.  This Court cannot issue a judgment concerning the constitutional speedy trial rights of every future criminal defendant, nor can it deprive prospective criminal defendants of their right to assert speedy trial claims in any future prosecutions.  Yet Plaintiffs here are asking this Court to issue a judgment concerning hypothetical prosecutions, which may or may not occur, which would have a sweeping effect "that would reach far beyond the particular case."  Wycoff, 344 U.S. at 243; see also Colorado

17

River, 424 U.S. at 814 (abstention appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar") (collecting cases).  Thus, the declaratory judgment requested would be inappropriate.  See Calderon v. Ashmus, 523 U.S. 740, 746-48 (1998); Wycoff, 344 U.S. at 244-46.

Moreover, a declaratory judgment in this action would fall squarely into the category of judgments that "would improperly encroach on the domain of a state . . . court."  See New York Times Co., 459 F.3d at 167.  "[I]t is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one."  Hansel v. Town Court for Town of Springfield, 56 F.3d 391, 393 (2d Cir. 1995).  This action asks this Court to intervene into the State's administration of its criminal justice system, an area of great State interest.  Such encroachment weighs against the exercise of jurisdiction.

Finally, there is a "better and more effective remedy" available.  As explained below, Plaintiffs have the ability to challenge the constitutionality of their prosecutions within the context of their state court criminal proceedings.  See infra, Point II(C).  Federal relief is unnecessary to adjudicate their claims.  Accordingly, comity and federalism principles dictate that this Court should abstain from hearing this matter.

### C. Abstention Is Appropriate Because Plaintiffs Have the Ability to Challenge Delay in the State Court Proceeding.

This Court is not the proper forum for Plaintiffs to bring this challenge, because even if Plaintiffs are subjected to future prosecution in Bronx Criminal Court, they will have numerous opportunities to challenge any alleged constitutional speedy trial violations in their state court proceedings.

In New York, a criminal defendant is guaranteed the constitutional right to a speedy trial as set forth by New York State Criminal Procedure Law ("CPL") § 30.20, New York Civil Rights Law § 12, and the Sixth Amendment of the United States Constitution.  See People v. Johnson, 38 N.Y.2d 271, 273 (1975).  The applicable time period for the accused's constitutional speedy trial right is from the institution of the prosecution to its disposition.  See People v. White, 32 N.Y.2d 393, 397 (1973).  A criminal defendant has several opportunities to raise the issue of a potential violation of his or her constitutional right to a speedy trial before the state trial court and the appellate courts.  See CPL § 210.20(g); CPL § 440.10(h); CPL § 450.15.  The constitutional right to a speedy trial may also be preserved after a guilty plea.  See People v. Blakely, 34 N.Y.2d 311, 314 (1974) ("The improper denial of a motion to dismiss the indictment on the grounds that the defendant has not been afforded a speedy trial survives a plea of guilty and may be raised on appeal.").  A defendant's ability to bring a speedy trial challenge in the context of his criminal court proceeding encompasses the ability to challenge delays due to court congestion.  See id. at 315-17.

New York courts examine five factors to determine whether a constitutional speedy trial violation has occurred.  See People v. Taranovich, 37 N.Y.2d 442 (1975).  These factors include the length of delay, the reason for such delay, the nature of the underlying charge, the length of pretrial incarceration, and whether or not there is any indication that the defense has been impaired because of the delay.  Id.  While these factors "essentially mirror" the Supreme Court's inquiry in Barker v. Wingo, 407 U.S. 514, 530 (1972) (see infra, Point III), New York's standards are more liberal than the federal standards as they do not always require a showing of prejudice by the defendant.  See Smith v. Maher, 468 F. Supp. 2d 466, 474 (W.D.N.Y. 2006) ("[I]n this State, failure to conduct a prompt prosecution, in a proper case, may require dismissal

19

of an indictment even in the absence of prejudice to the defendant.") (citing People v. Staley, 41 N.Y.2d 789, 792 (1977)).  Therefore, if in the future, Plaintiffs face prosecution in Bronx Criminal Court, they would have the ability to raise in the New York courts the very issue they raise in this case, and seek dismissal of their criminal case.

Plaintiffs inexplicably provide a detailed description of New York's statutory speedy trial provision as embodied by CPL § 30.30.  See Compl. ¶¶ 105-115.  However, CPL § 30.30 does not establish standards for constitutional speedy trial rights of criminal defendants, and in fact, does not even apply to all crimes.  See CPL § 30.30(3).  Further, unlike the constitutional right as described above, the calculation of the applicable CPL § 30.30 time period for an alleged violation generally ends upon the prosecution's announcement of readiness, see People v. Kendzia, 64 N.Y.2d 331, 337 (1985), and excludes certain periods of time for various circumstances.  See CPL § 30.30(4).  Accordingly, the statutory right to a speedy trial is different and inapplicable when examining an alleged violation to a criminal defendant's constitutional right to a speedy trial.  See Kaufman, 466 F.3d at 87 ("Abstention is appropriate where the plaintiff has an opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit.") (citation omitted); Miller v. Silbermann, 951 F. Supp. 485, 492-93 (S.D.N.Y. 1997) (abstaining from hearing claim that housing court judges are biased against landlords, in part because bias claims could be litigated at some point in the state proceedings).  Thus, abstention is appropriate here because Plaintiffs would have the opportunity to litigate any future constitutional speedy trial claims in state court.

## III.    PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS.

Plaintiffs' claim for denial of their right to a speedy trial under the Sixth and Fourteenth Amendments and due process fails as a matter of law.  As discussed above, Plaintiffs do not have

any criminal charges currently pending against them in Bronx Criminal Court.  Therefore, their

speedy trial rights are not being violated.  Further, Plaintiffs do not seek monetary damages for

any purported damages suffered by them due to delays in past prosecutions, nor could they, as

such claims would be barred by sovereign immunity.[6]

Even if Plaintiffs somehow wished to challenge the constitutionality of their past or

potential prosecutions, they would be unable to state a claim.  In determining the viability of a

claim for a violation of the right to a speedy trial or a violation of due process as a result of

delay, courts consider the following four factors:  (1) length of the delay; (2) the reason for the

delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  Barker v.

Wingo, 407 U.S. 514, 530 (1972).  The Supreme Court has rejected the notion that the Sixth

Amendment may be confined to a rigid set of rules.  Wallace, 499 F.2d at 1349.  Instead, it has

held that the speedy trial right cannot be quantified into any specific period of time.  Id.  The

Sixth Amendment does not require the state to bring a criminal defendant to trial within any

specific time period.  Id.  Rather, each individual's circumstances must be evaluated to determine

whether a criminal defendant's constitutional rights have been violated.  Id.

Due to the individualized nature of such claims, Plaintiffs cannot bring this action on

behalf of others.  The determination of whether an individual's constitutional speedy trial rights

have been violated is fact-specific, and thus, must be made on a case-by-case basis.  "[T]he

federal courts must limit their inquiry to the specific facts regarding a complaining petitioner.

---

[6]  The Eleventh Amendment shields states from lawsuits brought by private parties in federal court unless the state consents to such a suit or Congress has expressly abrogated the state's immunity.  See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363-64 (2001); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000).  It is well settled that the State of New York has not consented to suit in federal court, Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977), and that Section 1983 was not intended to override a state's immunity.  Quern v. Jordan, 440 U.S. 332, 343 (1979); U.L. v. N.Y. State Assembly, No. 13 Civ. 438, 2014 U.S. Dist. LEXIS 11215, at **7-8 (S.D.N.Y. Jan. 29, 2014), aff'd 592 Fed. Appx. 40 (2d Cir. 2015), cert. denied, 136 S. Ct. 153 (2015).  Thus, "sovereign immunity bars section 1983 claims, whether rooted in alleged violations of constitutional or statutory law, against New York State or its officers in their official capacities."  Goonewardena v. New York, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007).

Relief from unconstitutional delays in criminal trials is not available in wholesale lots. Whether an individual has been denied his rights to a speedy trial must be determined ad hoc on a case-by-case basis." Wallace, 520 F.2d at 405-06.  Thus, the comprehensive, blanket judgment sought by Plaintiffs here is unavailable.

The complaint is wholly devoid of allegations showing that any of the Plaintiffs' speedy trial rights were violated in Bronx Criminal Court.  Compl. ¶¶ 1-142.  Specifically, while Mr. Trowbridge alleges that he has been prosecuted in Bronx Criminal Court at least six times since 2008, Compl. ¶ 85, he does not allege that any of those prosecutions took an excessive amount of time, much less were delayed to such an extent that he was denied his due process rights or his right to a speedy trial.  Similarly, Mr. Ortiz alleges that he has been arrested and prosecuted fourteen times in unspecified courts, Compl. ¶ 82, but he does not allege that he was denied his right to a speedy trial in any of those prosecutions.  With respect to the purported delay of the past prosecutions of Mr. Pagan and Mr. Torres, Plaintiffs fail to provide a detailed chronology alleging how much of the delay, in terms of days, was due to the court system, the prosecution, or other factors outside of their control.[7]

---

[7]  For example, Mr. Torres alleges that there were ten trial dates scheduled in his prior case in Bronx Criminal Court, and that the prosecution was not ready for trial on seven of those dates.  Compl. ¶¶ 65-66.  He does not indicate why the trial did not proceed on the other three trial dates, whether his counsel was ready on any or all of the trial dates, or the length of time that passed in between trial dates.  See id.  Similarly, Mr. Pagan alleges that out of sixteen trial dates, eleven were adjourned due to a lack of trial parts, and three were adjourned because the prosecution was not ready.  Id. ¶¶ 76-78.  He does not state what occurred on the other two dates.  See id.  The same is true for the "Individual Examples of Court Delay" set forth in the complaint concerning non-parties; the allegations are silent as to the cause of delay on the allegedly numerous trial dates.  See id. ¶¶ 43-45 (noting that out of 30 scheduled trial dates, the prosecution was not ready on twelve dates and there were no Trial Parts available on nine dates, but remaining silent as to the reason for not going forward on the other nine dates); id. ¶¶ 51-53 (noting that out of 28 trial dates, the prosecution was not ready on five dates and there were no Trial Parts available on 16 dates, but remaining silent as to the reason for not going forward on the other seven dates); id. ¶¶ 59-61 (noting that out of 19 trial dates, the prosecution was not ready on six dates and there were no Trial Parts available on ten dates, but remaining silent as to the reason for not going forward on the other three dates).

22

Moreover, none of the Plaintiffs alleges that he raised a constitutional speedy trial challenge within the context of his state court criminal case.[8]  Plaintiffs' failure to avail themselves of the state remedies available to them weighs in favor of dismissal.  See Barker, 407 U.S. at 531-32 ("[t]he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.").

Most critically, Plaintiffs do not allege that they suffered prejudice due to the purported delays in Bronx Criminal Court.  Prejudice must be assessed in the light of the interests of defendants that the speedy trial right was designed to protect.  Barker, 407 U.S. at 532.  Those interests are:  (1) preventing oppressive pre-trial incarceration; (2) minimizing the accused's anxiety and concern over the pending criminal charges; and (3) limiting the possibility that the defense will be impaired.  Id.; Doggett v. United States, 505 U.S. 647, 654 (1992).  Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Barker, 407 U.S. at 532; Doggett, 505 U.S. at 654.  Although a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been reluctant to find a constitutional speedy trial violation in the absence of "genuine prejudice."  United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997) (citing Rayborn v. Scully, 858 F.2d 84, 94 (2d Cir. 1988)).

Here, Plaintiffs do not allege facts showing prejudice, especially with respect to their ability to adequately prepare and present their cases.  In fact, the only Plaintiff who alleges that he served any jail time (aside from one to two days in custody surrounding the initial arrest), Mr.

---

[8]  Mr. Torres alleges that he moved to dismiss his criminal case on statutory speedy trial grounds, not constitutional grounds.  Compl. ¶ 67.

Ortiz, does not allege that his prosecution was delayed in any way.[9]  Compl. ¶¶ 82-83.  The other

Plaintiffs were either acquitted of the charges against them or obtained an adjournment in

contemplation of dismissal.[10]  Compl. ¶¶ 68, 79.[11]  The same is true for the non-party individuals

discussed in the complaint.  Id. ¶¶ 43, 55, 58.  While Mr. Pagan makes vague allegations about

that he "the stress of having an open misdemeanor case," Compl. ¶ 79, and Mr. Torres make

allegations concerning his work and personal life, Compl. ¶¶ 69-71, both individuals had a

favorable result to their criminal case, Compl. ¶¶ 68, 79.  Indeed, Mr. Torres acknowledges that

the charges against him were dismissed due to the arresting police officer's lack of recollection

concerning the arrest.  Compl. ¶ 68.  Therefore, any purported delay did not impair his defense.

Accordingly, given that Plaintiffs cannot raise this constitutional challenge on behalf of

others, they are not facing current prosecutions of their own to challenge on constitutional

speedy trial grounds, and they fail to assert allegations concerning any constitutional deprivation

with respect to their past prosecutions, their claims must be dismissed for failure to state a claim.

Finally, Plaintiffs' due process claim should be dismissed as duplicative of their speedy

trial claim.  "Where a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

Albright v. Oliver, 510 U.S. 266, 273 (1994).  Specifically, when "defendants' purported actions

would not--but for the allegations of [other constitutional] violations--be sufficiently shocking to

---

[9]  The complaint does not indicate whether Mr. Ortiz was convicted at trial or accepted a plea bargain.

[10]  "An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view
to ultimate dismissal of the accusatory instrument in furtherance of justice."  CPL § 170.55(2).  The criminal
proceeding is adjourned for a certain period of time, at the end of which the charges are dismissed.  The granting of
an adjournment in contemplation of dismissal is not deemed a conviction or an admission of guilt.  See CPL §
170.55(8); see also Compl. ¶ 43 (noting that a non-party, Sarah Bello, "accepted an adjournment in contemplation of
dismissal requiring no admission of guilt and resulting in a full dismissal of the charges").

[11]  The complaint is silent as to the outcome of Mr. Trowbridge's past prosecutions.  See Compl. ¶¶ 84-86.

state substantive due process claims, . . . plaintiff's substantive due process claim is either

subsumed in h[is] more particularized allegations, or must fail."  Velez v. Levy, 401 F.3d 75, 94

(2d Cir. 2005).  Here, Plaintiffs allege that the purported delay in the processing of

misdemeanors violates their due process rights, which are subsumed in their allegations of a

denial of speedy trial rights under the Sixth Amendments.  Therefore, the due process claim

should be dismissed as duplicative.

## IV.    THE GOVERNOR IS NOT A NECESSARY OR PROPER PARTY.

All claims against Governor Cuomo should be dismissed because he is not a necessary or

proper party.  Plaintiffs do not allege that Governor Cuomo has control over the administration

of misdemeanor trials in Bronx Criminal Court.  Rather, Plaintiffs merely allege that the

Governor is "the chief law enforcement officer of New York State" (Compl. ¶ 21), which is

insufficient to make him a proper or necessary party.  See Nolan v. Cuomo, 2013 U.S. Dist.

LEXIS 6680 (E.D.N.Y. Jan. 16, 2013) (citing cases); see also N.Y.S. Motor Truck Ass'n v.

Pataki, 2004 U.S. Dist. LEXIS 25519 at *12 (S.D.N.Y. Dec. 17, 2004) ("Since the complaint

fails to allege that the Governor has any connection with the enforcement of the statute, other

than his general duty to ensure the laws are faithfully executed, he is immune from suit even

though the remedy sought here is only injunctive and declaratory relief.").[12]  Accordingly, the

claims asserted against Governor Cuomo should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

complaint, with prejudice, together with such other and further relief as it deems just and proper.

---

[12]  To the extent Plaintiffs take issue with the Governor's statements concerning funding, the Governor does not
have the authority to appropriate funds, nor can this Court order the State to appropriate funds.  See supra, n.5.

Dated:  New York, New York
       June 30, 2016

                            Respectfully submitted,

                            ERIC T. SCHNEIDERMAN
                            Attorney General of the State of New York
                            *Attorney for Defendants*
                            By:
                                /s/ *Alissa S. Wright*
                            ALISSA S. WRIGHT
                            MICHELLE R. LAMBERT
                            Assistant Attorneys General
                            120 Broadway, 24th Floor
                            New York, New York 10271-0332
                            Tel: (212) 416-6035