**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER  TROWBRIDGE,  MICHAEL
TORRES, RONNIE PAGAN, and JUAN ORTIZ,
*individually and on behalf of a class of all others*
*similarly situated,*

Plaintiffs,

-against-

ANDREW CUOMO, *in his official capacity as the*
*Governor of the State of New York*, JANET
DIFIORE, *in her official capacity as the Chief*
*Judge of the State of New York and Chief Judicial*
*Officer of the Unified Court System*, and
LAWRENCE MARKS, *in his official capacity as*
*Chief Administrative Judge of the Unified Court*
*System,*

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 22 2016

MEMORANDUM DECISION
AND ORDER
16 Civ. 3455 (GBD)

GEORGE B. DANIELS, United States District Judge:

At stake in this action are critical constitutional guarantees of efficient speedy trial due process that undergird the American system of criminal justice.   Plaintiffs, Christopher Trowbridge, Michael Torres, Ronnie Pagan, and Juan Ortiz (together "Plaintiffs"), on behalf of themselves and all others who will likely be denied a speedy trial caused by delays in the New York City Criminal Court, Bronx County ("Bronx Criminal Court"), bring this action against Defendants, Governor Andrew Cuomo, Chief Judge Janet DiFiore, and Chief Administrative Judge Lawrence Marks (collectively "Defendants") for violations of due process, (Compl., ECF No. 1,  ¶¶ 138-39), and their rights to a speedy trial, (*id.* ¶¶ 140-42), under the federal civil rights statute, 42 U.S.C. § 1983, and the Sixth and Fourteenth Amendments of the United States Constitution.  (*Id.* ¶ 15.)

1

This action arises out of the alleged severe and persistent delays in "processing misdemeanor cases, court congestion, and case backlogs (collectively [termed] 'Court Delay')" plaguing the Bronx Criminal Court.  (*Id.* ¶ 1.)  Plaintiffs seek certification of a putative class pursuant to Rule 23 of the Federal Rules of Civil Procedure, a declaration that "Defendants' acts, practices, policies, and/or omissions deprive Plaintiffs of their rights under the Sixth and Fourteenth Amendments to the United States Constitution," appropriate equitable relief, attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, as well as any other "just and proper" relief.  (*Id.* ¶¶ 143-47.)

Defendants move to dismiss each Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under the principles of abstention.  Defendants also move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Defs.' Mot. to Dismiss, ECF No. 29; Defs.' Mem. in Supp. of Mot. to Dismiss ("Mem."), ECF No. 30, at 2.)[1]

Defendants' Motion to Dismiss Plaintiffs' claims for lack of standing is GRANTED without prejudice.  However, this Court declines to abstain adjudication, and Defendants' Motion to Dismiss for failure to state a claim is denied.  Governor Andrew Cuomo is dismissed as a defendant from this action.  Plaintiffs may amend the Complaint within thirty days of this Order to include named plaintiffs who have pending delayed cases in Bronx Criminal Court, provided that amendment would not be futile.

## I.    BACKGROUND

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend.

---

[1] The motion was fully submitted following the filing of Plaintiff's Opposition brief ("Opp'n," ECF No. 33) and Defendant's Reply brief ("Reply," ECF No. 34).

VI.  It is axiomatic that the right to a speedy trial applies to the states through the Fourteenth

Amendment.  In New York, the right to a speedy trial is codified at New York Criminal Procedure

Law §§ 30.20 and 30.30.  (Compl. ¶ 104 (citing N.Y. Crim. Pro. L. §§ 30.20, 30.30).)  Section

30.20 provides that "[a]fter a criminal action is commenced, the defendant is entitled to a speedy

trial."  (*Id.*)  Section 30.30 provides that a court must dismiss a criminal case if the People are not

ready for trial within:

> ninety days of the commencement of a criminal action wherein a defendant is accused of
> one or more offenses, at least one of which is a misdemeanor punishable by a sentence of
> imprisonment of more than three months [also known as a Class A misdemeanor] and none
> of which is a felony;[2]

> sixty days of the commencement of a criminal action wherein a defendant is accused of
> one or more offenses, at least one of which is a misdemeanor punishable by a sentence of
> imprisonment of not more than three months [also known as a Class B misdemeanor] and
> none of which is a [Class A misdemeanor]; [or,]

> thirty days of the commencement of a criminal action wherein a defendant is accused of
> one or more offenses, at least one of which is a violation and none of which is a crime.

N.Y. Crim. Pro. L. §§ 30.30(b-d); (*see also* Compl. ¶¶ 105-107).

The Complaint alleges that despite such safeguards, "the few people who manage to

exercise their right to trial in misdemeanor cases wait on average 642 days for a non-jury bench

trial and an astonishing 827 days for a jury trial" in Bronx Criminal Court.  (Compl. ¶ 7.)

## A.  Trial Readiness in Practice

On behalf of a putative class of "all persons who will be prosecuted in Bronx Criminal

Court with a misdemeanor or lesser offense as the top charge," (*Id.* ¶ 24), Plaintiffs allege several

structural barriers to timely misdemeanor adjudication that are unique to the Bronx Criminal Court.

(*See id.* ¶¶ 10-11.)  Indeed, Plaintiffs allege that even before proceeding to trial, delays are part of

---

[2] Plaintiffs allege that the New York Courts' Standards and Goal Guidelines for the Disposition of Criminal
Cases (which are on par with national standards) provide "that a misdemeanor case should reach final
disposition within 90 days of arraignment."  (*Id.* ¶¶ 90-91.)

the process: while hearings on the constitutionality of searches, seizures, and identification processes are routinely granted as part of criminal motion practice, "the hearings . . . are not conducted until much later, if ever." (*Id.* ¶ 33.)

Upon completion of motion practice, the case is scheduled for "hearings and trial"— essentially a "trial ready date." (*See id.* ¶ 34.) If either side is not ready, the judge adjourns the case usually by four to six weeks. However, time accrues toward the speedy trial requirement only when the prosecution is not ready for trial, (*id.* ¶ 111), and, according to Plaintiffs, such time is only counted in the amount requested by the prosecutor. (*Id.* ¶ 112.) That is, if a prosecutor requests a week's adjournment, a Trial Part may not then be available, and a judge may adjourn for one to two months at a time, but only the week-long request is counted toward the statutory speedy trial calendar. (*Id.*)

If both the prosecutor and defendant are ready, the judge determines if a Trial Part is available. (*Id.* ¶ 34.) If no Trial Parts are available, the case is again adjourned. (*Id.*) Even in circumstances where a Trial Part is available, Plaintiffs allege that trial usually does not commence due to various reasons, *inter alia*, witness unavailability or even witnesses' failure to appear, in which case, the judge may again adjourn the trial. (*Id.* ¶ 35.)

### B. Systemic Delay By the Numbers

According to Plaintiffs, at the beginning of 2016, the Bronx Criminal Court had 538 misdemeanor cases that had been pending for over two years and 2,378 such cases pending for over a year—well in excess of the ninety-day standard. (*See* Compl. ¶ 5.)

Plaintiffs allege that 2015 fared no better: while the Bronx Criminal Court handled 45,000 misdemeanor arraignments, it only held ninety-eight misdemeanor trials. (*Id.* ¶ 6.) Plaintiffs further allege that, in 2015, on average, while more than 800 new misdemeanor cases were filed

each week, fewer than two were resolved by trial. (*Id.*) Plaintiffs allege that at the end of 2015, the average misdemeanor case had been pending in Bronx Criminal Court for 219 days—almost 250% longer than the timeline provided by the New York Courts standard. (*Id.* ¶ 92.) Plaintiffs further allege that over 64% of misdemeanor cases had been pending in excess of the ninety-day standard, and 19% of cases had been pending over a year. (*Id.*) Such delays occurred despite the implementation of a specialized Bronx Misdemeanor Standards & Goals Part, a courtroom dedicated to processing the oldest misdemeanors, at the end of 2014. (*Id.* ¶ 94.)

In light of such delays, according to Plaintiffs, "many people charged with misdemeanors in the Bronx plead guilty in order to stem the ongoing costs associated with returning to court for months on end." (*Id.* ¶ 9.) Plaintiffs allege that such costs include job termination, "missed work, lost wages, school absences, rescheduled medical appointments, childcare emergencies, strained professional and familial relationships, and psychological stress." (*Id.* ¶¶ 12, 132-33.) Plaintiffs further allege that, as a general rule, Bronx criminal defendants are "required to appear in court on each and every court date," even for perfunctory conferences, usually by 9:30 a.m., and often wait many hours because there "may be more than 100 cases on the calendar in any given courtroom." (*See id.* ¶ 37.)

Plaintiffs allege that the Manhattan, Brooklyn, Queens, and Staten Island Criminal Courts do not have similar delays, (*id.* ¶ 10), and that in 2013, the Bronx Criminal Court backlog for cases older than a year "was greater than the four other boroughs . . . combined." (Compl. ¶ 125.) Plaintiffs further allege that former and current members of the Bronx District Attorney's office, including current District Attorney, Darcel Clark, the New York City Mayor's Office of Criminal Justice, as well as the state court system itself, have "recognized the need to expand trial capacity in the Bronx, recommending, in part, an increase in . . . additional judges and court staff" since at

least 2009, but that the court system's widely-recognized[3] lack of funds has led to just the opposite. (*Id.* ¶¶ 117-19 (citing Jonathan Lippman, et al., New York State Unified Court System Budget: Fiscal Year 2014-2015, at iii (2013), available at https://www.nycourts.gov/admin/financialops/ BGT14-15/2014-15-Budget.pdf).) More specifically, Plaintiffs allege that funding has failed to increase at an appropriate rate. The costs to operate the New York Courts increased by about $400 million between 2009 and 2015 and outstripped the budget increase of only $27.5 million. (*Id.* (citing Report in Support of the Judiciary's 2015-2016 Budget Request, N.Y.C. Bar Ass'n 1 (Feb. 2015),   http://www2.nycbar.org/pdf/report/uploads/20072866ReportinSupportoftheJudiciarys 20152016 BudgetRequest.pdf).) Former New York State Chief Judge Jonathan Lippman has characterized the situation in Bronx Criminal Court as "intolerable" and "entirely unacceptable." (*See id.* ¶¶ 13-14 (citing William Glaberson, *Faltering Courts, Mired in Delay*, N.Y. Times, Apr. 13,   2013,   http://www.nytimes.com/2013/04/14/nyregion/justice-denied-bronx-court-system-mired-in-delays.html) (internal quotation marks omitted); *see also id.* ¶ 128 (internal citation omitted)).

Plaintiffs allege more specifically that depleted court officers, clerical staff, and reporters have led to a domino effect of delays ranging from processing of court documents to deciding motions to opening of Court Parts for trials, which has been "exacerbated by a shortage of judges to consistently preside over jury [T]rial [P]arts." (*Id.* ¶¶ 119, 121-22.) According to Plaintiffs, in 2015, Trial Parts lay empty 31% of the time. (Compl. ¶ 99.) Plaintiffs further allege that not only court staff and judges, but even additional courtrooms, are needed to alleviate the dire situation. (*Id.* ¶ 127.)

---

[3] Plaintiffs cite to public statements about the Court Delay made between 2001 and 2014 by various New York State Court personnel, including former Chief Administrative Judges Gail Prudenti and Ann Pfau, former New York Criminal Court Administrative Judge Barry Kamins, and Defendant Chief Administrative Judge Marks. (*See* Compl. ¶ 119.)

## C.  Named Plaintiffs

The named Plaintiffs are three Bronx residents (Trowbridge, Torres, and Ortiz) and one Manhattan resident (Pagan), who allege that they "will be prosecuted in Bronx Criminal Court with a misdemeanor or lesser offense as the top charge." (*Id.* ¶¶ 19-20.)   None of the four named Plaintiffs had a current pending case before the Bronx Criminal Court at the time of filing of the Complaint or thereafter.[4]  (*See id.* ¶¶ 63-86.)

### 1.  Christopher Trowbridge

Plaintiff Trowbridge alleges that he has struggled with a heroin addiction for the last eighteen years, which has already "led to multiple arrests and [at least six] prosecutions in Bronx Criminal Court" since 2008.  (*Id.* ¶¶ 84-85.)  As a "long-term drug addict," prone to relapses, Trowbridge "will likely be arrested and prosecuted in the Bronx again," upon which he will allegedly be subject to the unconstitutional delays in the Bronx Criminal Court.  (Compl. ¶ 86.) However, Trowbridge does not allege that he has ever been subject to unreasonable Court Delay or denied a speedy trial.  (*See id.* ¶¶ 84-86.)

### 2.  Michael Torres

Plaintiff Torres alleges that his various occupations in the construction industry, which include installing windows and doors, require him to carry a folding knife to and from work on a

---

[4] The Complaint also alleges incidents of Court Delay that non-parties to this action have experienced due to the unavailability of Trial Parts and/or the People stating "not ready."  (*See* Compl. ¶¶ 38-62.)  For example, Plaintiffs allege that Sarah Bello, a single mother of four, was arraigned and prosecuted for a misdemeanor, and over 1,166 days, had to appear for thirty-three conferences—thirty of which were trial dates—before her case was adjourned in contemplation of dismissal. (*See id.* ¶¶ 42-46.)  Plaintiffs further allege that because her criminal prosecution was pending, her Violence Against Women Act-based permanent residency petition was ultimately denied.  (*Id.* ¶¶ 41, 47.)  Joseph Bermudez's misdemeanor prosecution allegedly lasted 1,255 days after his arraignment, and twenty-eight out of his thirty-eight scheduled court dates were trial dates.  (*Id.* ¶¶ 50-52.)  According to Plaintiffs, on at least sixteen of those trial dates, no Trial Parts were available, and on five trial dates, the People stated "not ready."  (*Id.* ¶¶ 52-53.)  Plaintiffs allege that John Carridice, who was charged with misdemeanor and non-criminal violations for intervening in a street fight, experienced a delay of 1,003 days involving nineteen trial dates out of his twenty scheduled court appearances.  (*Id.* ¶¶ 57-58.)

daily basis.  (*Id.* ¶ 72.)  Plaintiff further alleges that while his knife is legal and regularly sold by home improvement and camping retailers, "police officers regularly arrest, and the [D.A.] regularly prosecutes people—primarily people of color from low-income communities like the South Bronx—for possession of such knives," because of their purported similarity to illegal gravity knives.  (*Id.*)  Plaintiff alleges that he is likely to be prosecuted in Bronx Criminal Court also because his jobs require him to drive to sites not accessible by public transportation, and his license has been suspended in Florida for the last six years.  (*Id.* ¶ 73.)

Torres alleges that he experienced the very delays detailed in the Complaint when he was prosecuted in September 2011 for a marijuana possession misdemeanor.  (Compl. ¶ 64.) According to Torres, of the fourteen scheduled court dates for which Torres appeared in person, ten were trial dates, and on February 20, 2014, at least 877 days after his arraignment, his case was dismissed after the arresting officer testified he had no independent recollection of Torres' arrest. (*Id.* ¶¶ 65, 68.)  Torres further alleges that he has lost wages and at least one construction job throughout the more than two years his case remained pending because of the number of times he had to appear in court.[5]  (*Id.* ¶¶ 69, 70.)

### 3. Ronnie Pagan

Plaintiff Pagan, a Manhattan resident with a girlfriend and children who live in the Bronx, alleges that he is routinely stopped and has been arrested by police officers on suspicion of trespassing in his girlfriend's building because his driver's license has a Manhattan address.  (*Id.* ¶ 80.)  Plaintiff alleges that the City of New York has a "well-documented" anti-trespass policy for New York City Housing Authority buildings such as the one in which Pagan's girlfriend and

---

[5] None of the Plaintiffs seek damages for alleged past injuries.  (*See* Compl. ¶¶ 143-147.)

children live, which is likely to be used against him and to result in his re-entry into the Bronx Criminal Court system with its myriad delays. (*Id.*)

Pagan alleges he has been subjected to unreasonable Court Delay as a result of a stop and search in February 2014, which led to his arrest, charge, and prosecution for misdemeanor drug possession, obstruction of governmental administration, and trespass. (Compl. ¶ 75.) Pagan alleges that since his arraignment, he had wanted to go to trial. (*Id.*) Pagan further alleges that of his eighteen court dates, sixteen were trial dates, and on eleven of those trial dates both parties were ready, but no Trial Parts were available. (*Id.* ¶¶ 76-77.) On three other trial dates, the People requested adjournments because they were not ready. (*Id.* ¶ 78.) 763 days after Pagan's arraignment, on March 21, 2016, Pagan alleges that he "reluctantly accepted an adjournment in contemplation of dismissal" because of "the stress of having an open misdemeanor case." (*Id.* ¶ 79.)

### 4. Juan Ortiz

Plaintiff Ortiz alleges that he has a psychiatric condition brought on by the stress and anxiety of undergoing surgery and chemotherapy for colon cancer. (*Id.* ¶ 81.) According to Ortiz, his multiple medications cause episodes of "severe disorientation" in which he experiences a compulsion to shoplift. (Compl. ¶ 82.) Ortiz further alleges that between December 2012 and March 2015, he was arrested and prosecuted fourteen times for petit larceny and/or possession of stolen goods. (*Id.*) Ortiz alleges that in one of his criminal matters, he received a one-year sentence of incarceration and was released in September 2015. (*Id.*) Ortiz does not allege that he was subject to unreasonable Court Delay during his prior court cases. (*See id.* ¶¶ 81-83.) Because of his ongoing psychiatric condition, Ortiz contends that he will likely be arrested and prosecuted in the Bronx where he will be subjected to Court Delay. (*Id.* ¶ 83.)

### D. Defendant-specific Allegations

According to Plaintiffs, Defendant Governor Andrew Cuomo, as Governor of New York, "the chief law enforcement officer of New York State," bears the responsibility to allocate judicial resources in a way that upholds due process and speedy trial rights under the federal Constitution and New York laws. (*Id.* ¶ 21.) Plaintiffs allege that the Governor rejected the state judiciary's request for a 2.7% funding increase for the 2014-2015 fiscal year and urged the Legislature and the state courts to "reduce the Judiciary budget so that it is in line with the rest of [s]tate spending." (Compl. ¶ 123.) While the Governor approved a 2.4% increase ($44.4 million) in spending for 2016-2017, Plaintiffs allege such an increase does little to alleviate systemic court delays because part of that increase pays for mandatory raises of state judicial salaries. (*Id.* ¶ 124.)

Defendant Janet DiFiore is Chief Judge of the New York Court of Appeals, Chief Judicial Officer of the New York State Courts, and the Chair of the Administrative Board of the New York Courts. Plaintiffs allege she is responsible for the Bronx Criminal Court's compliance with the law and for the establishment and enforcement of the New York court system's administrative policies. (*Id.* ¶ 22.) Finally, Plaintiffs allege that Defendant Lawrence Marks, Chief Administrator and Chief Administrative Judge of the New York Courts, supervises the administration and operation of the state court system. (*Id.* ¶ 23.)

### II.     MOTION TO DISMISS FOR LACK OF STANDING

Defendants argue that Plaintiffs, none of whom have cases pending in Bronx Criminal Court, lack standing to bring this action because their allegations fail to show injury-in-fact. (*See* Mem., at 8-13.) More specifically, Defendants contend that Plaintiffs' allegations of potential delays are too speculative, and fail to allege an individual imminent threat of future harm vis a vis enforcement of a policy or practice. (*Id.*, at 12.)

### A. Legal Standard

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1).[6] *See All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006) (internal citation omitted) (holding that standing challenges are properly brought under Rule 12(b)(1) prior to a challenge on the merits). Article III of the Constitution mandates that federal courts may only hear live "cases" and "controversies." *See* U.S. Const., art. III, § 2; *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (internal citation omitted). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (internal citation omitted).

### B. Standing

To establish Article III standing, a plaintiff must show that (1) he has suffered an actual or imminent injury-in-fact, which is concrete and particularized; (2) there is a causal connection between the injury and the defendant's actions; and (3) it is likely that a favorable decision in the case will redress his injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought," be it compensatory or injunctive. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185

---

[6] With regard to standing, the Second Circuit has instructed:

> [w]hile standing, which is an issue of justiciability[,] addresses the question whether a federal court may grant relief to a party in the *plaintiff's* position, subject matter jurisdiction addresses the question whether a federal court may grant relief to *any* plaintiff given the claim asserted. Thus, although both subject matter jurisdiction and standing (as well as other questions of justiciability) act to limit the power of federal courts' "jurisdiction" in the broadest sense of the term, the two must be treated distinctly.

*Rent Stabilization Assoc. of the City of N.Y. v. Dinkins*, 5 F.3d 591, 594 n.2 (2d Cir. 1993) (citing *Flast v. Cohen*, 392 U.S. 83, 98-99 (1968)) (emphasis in original); *see also Lunney v. United States*, 319 F.3d 550, 560 (2d Cir. 2003) (distinguishing between a lack of standing and a lack of subject matter jurisdiction and stating that "lack of subject matter jurisdiction means that *no one* can have standing").

(2000) (internal citation omitted); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). To establish standing to bring prospective claims for relief, a plaintiff must allege a case or controversy of "sufficient immediacy and reality." *City of L.A. v. Lyons*, 461 U.S. 95, 104 (1983) (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (internal quotation marks omitted)).

To establish Article III standing in a class action, "the named class plaintiffs 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Sedlin*, 422 U.S. 490, 502 (1975) (internal citation omitted)). "[F]or every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant." *NECA-IBEW Health & Welfare v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2nd Cir. 2012) (internal citation and quotation marks omitted); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) ("It is clear that members of the Union, one of whom is an appellee here, will sustain injury by not receiving a scheduled increase in benefits.")

### 1. Injury-in-Fact

For a plaintiff to establish standing, he must sufficiently allege his own injury-in-fact. *See Lujan*, 504 U.S. at 560-61. A plaintiff must show that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not conjectural" or 'hypothetical.'" *Lyons*, 461 U.S. at 102 (citing cases).

Plaintiffs do not dispute that none of the named Plaintiffs has a current open criminal case in Bronx Criminal Court. (Reply, at 2; *See* Compl. ¶¶ 63-86.)   Indeed, Plaintiffs conceded as

12

much during oral argument on this motion. (*See* Oral Arg. Tr. ("Tr."), at 59:2-4.)   While only Plaintiffs Torres and Pagan have alleged they have suffered past injury in the form of lengthy prosecutions (respectively, 877 days from arraignment to dismissal of charges, and 763 days from arraignment to presumed dismissal of charges), the Complaint does not request relief for their past injuries in the form of damages. *See Nicosia*, 834 F.3d at 239; (*see* Compl. ¶¶ 143-147.)

Although past injuries may provide a basis for Torres' and Pagan's standing to seek money damages, they do not confer standing to seek injunctive relief unless Plaintiffs can demonstrate that they are likely to be harmed again in the future in a similar way. *See Ligon v. City of N.Y.* ("*Ligon II*"), 925 F. Supp. 2d 478, 522 (S.D.N.Y. 2013) (quoting *Floyd v. City of N.Y.*, 283 F.R.D. 153, 169 (S.D.N.Y. 2012)) ("Concrete injury is a prerequisite to standing and a 'plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.'").   Accordingly, federal courts, including the Second Circuit, have recognized that the injury-in-fact requirement may be satisfied by sufficient allegations of the likelihood of future harm. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *Lyons*, 461 U.S. at 105-06).  Where, as here, a plaintiff seeks prospective injunctive relief, he must also demonstrate "that he is realistically threatened by a repetition of [the violation]." *Lyons*, 461 U.S. at 109.  The Second Circuit has held that "enhanced risk" of future injury may sometimes constitute injury-in-fact, but that "such injuries are only cognizable where the plaintiff alleges actual future exposure to that increased risk." *Nicosia*, 834 F.3d at 239.

Plaintiffs contend that they have plausibly alleged[7] a sufficient likelihood of future harm to establish standing for the named Plaintiffs because they are "regularly arrested for (low-level,

---

[7] Plaintiffs argue that in this Circuit, "a liberal standard for assessing pleading sufficiency under [Rule 8(a)] must be applied 'with particular strictness' where 'the complaint alleges a civil rights violation.'" (Opp'n

nonviolent) unlawful conduct . . . or lawful conduct regularly misperceived as unlawful." (Opp'n, at 6-7 (citing Compl. ¶¶ 72, 73, 80, 83, 86).) Plaintiffs rely upon cases which have held that "[t]he possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *See e.g.*, *Floyd*, 283 F.R.D. at 170 (holding that where plaintiff's risk of future injury is based on his arrest for lawful conduct, the risk of injury is not based on a string of unlikely contingencies); *Deshawn E.*, 156 F.3d at 344-45 (finding that because of an alleged official policy, plaintiffs were likely to suffer the harm of future interrogations in violation of their right against self-incrimination and coercion and right to counsel).

More specifically, Plaintiffs allege they are persons whose behaviors or circumstances will result in a high likelihood of their arrest and prosecution in Bronx Criminal Court. (Opp'n, at 7.) For example, Plaintiff Torres alleges that his current employment necessitates that he drive despite a suspended license, for which he has been prosecuted twice in the last six years, and carry a pocket knife easily mistaken for an illegal gravity knife, for which he has been prosecuted once. (*Id.*, at 8 (citing Compl. ¶¶ 63, 72-73).) Similarly, Plaintiff Trowbridge's heroin addiction has allegedly led to at least six prosecutions in Bronx Criminal Court since 2008. (*Id.* (citing Compl. ¶¶ 85-86).) Plaintiff Pagan's regular visits to his girlfriend and children's residence in a South Bronx NYCHA building has allegedly led to repeated arrests, exposing him to heightened risk of arrest and prosecution in Bronx Criminal Court. (*Id.* (citing Compl. ¶ 80).) Plaintiffs contend that Plaintiff Ortiz's medical condition also places him at heightened risk of arrest for compulsive shoplifting in the Bronx. (*Id.* (citing Comp. ¶ 82-83).) According to Plaintiffs, such constellations of facts— facts which make it likely that Plaintiffs will engage in facially unlawful behavior—heighten the

---

at 5 n.3 (citing cases).) While this Court acknowledges the Second Circuit's special attention to civil rights violations, such as those alleged here, this Court must also balance that against the Article III requirement that Plaintiffs establish standing. *See W.R. Huff*, 549 F.3d at 106 (internal citation and quotation marks omitted).

risk that Plaintiffs will likely be prosecuted in Bronx Criminal Court once again, where their right to a speedy trial will necessarily be violated due to the alleged Court Delay. (Opp'n, at 5; Tr., at 64:23-65:1, 14-17.)  Thus, Plaintiffs argue that "[i]t is the likelihood of prosecution in the future that imbues a person with standing." (Tr., at 64: 17-18.)

Plaintiffs' theory of standing based on a likelihood of future prosecution and trial delay is more accurately understood as a heightened risk of prosecution theory of standing. "[S]uch injuries are only cognizable where the plaintiff alleges actual future exposure to that increased risk." *Nicosia*, 834 F.3d at 239 (internal citation omitted).

Plaintiffs contend that they are realistically threatened by re-arrest in Bronx County for misdemeanors, extremely likely to be charged and prosecuted in Bronx Criminal Court, and thus necessarily subjected to systemic Court Delay. (Opp'n at 7-9.)  That argument is too attenuated to establish that these four Plaintiffs have standing. *See Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004) (finding that even if plaintiff were arrested again on a misdemeanor charge, "it is entirely conjectural that he would be detained overnight and remanded [to jail]" where he would be subject to the unconstitutional strip search); (*see* Reply, at 2).  Even if Plaintiffs might be realistically threatened with recurrence of arrest, that is wholly distinct from being charged and then prosecuted in Bronx Criminal Court, and thereafter denied a speedy trial due to the alleged unconstitutional Court Delay. *See Janes v. Triborough Bridge & Tunnel Auth.*, 889 F. Supp. 2d 462, 466-67 (S.D.N.Y. 2012) (finding that plaintiffs who lacked a drivers' license but might get one in the future lacked standing to challenge a differential toll under the Commerce Clause). While it is true that "the possibility of recurring injury ceases to be speculative when actual repeated incidents are documented," *Ligon v. City of N.Y.* (*Ligon I*), 288 F.R.D. 72, 81 (S.D.N.Y. 2013), the injury here is not Plaintiffs' lawful or unlawful arrests, but rather that they will

subsequently suffer a delayed prosecution in Bronx Criminal Court. *See Aguilar v. Immigr. & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 827-28 (S.D.N.Y. 2011). Plaintiffs may not conflate the process of arrest, charging, and an alleged inevitability of delayed prosecution to create an injury-in-fact.

While not necessarily required by law, Plaintiffs also do not specify an unconstitutional statute, deliberate pattern of behavior by the named Defendants, or any other practice—whether official or unofficial—that increases their probability[8] of repeated *prosecution and trial delay*, which if present, might take the allegations from speculative to realistic. *See Davis v. City of N.Y.*, 902 F. Supp. 2d 405, 444 (S.D.N.Y. 2012) (citing *Lyons*, 461 U.S. at 111) ("In addition, I note that defendants' policies are targeted at NYCHA residents and people present on NYCHA property; the fact that plaintiffs are members of that *relatively narrow community* is relevant to the standing inquiry.") (emphasis added); *Aguilar*, 811 F. Supp. 2d at 827 (finding realistic threat of harm where complaint alleges that "ICE agents explicitly threatened to return to two of the eight homes" searched, and that agents actually did return to one of the homes); *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 501, 504 (S.D.N.Y. 2001) (finding standing where plaintiffs alleged realistic threat of harm to an "identifiable class of targeted individuals" when police had an official policy and practice to stop and search persons in "allegedly known 'drug areas' without individualized reasonable suspicion); *Thomas v. Cty. of L.A.*, 978 F.2d 504, 508 (9th Cir. 1993) (holding that "numerous instances of police misconduct have occurred in a small six by seven block area[,]" creating an identifiable class of targeted individuals with standing to sue). Indeed, Plaintiffs cannot establish

---

[8] The lack of targeting also speaks to the potential difficulty that lies in alleging a putative class of plaintiffs eligible for prospective relief. At Oral Argument, Plaintiffs articulated a class member "who is highly likely to be prosecuted in Bronx Criminal Court and subjected to a system in which the right to a trial and the right to a speedy trial are functionally meaningless." (Tr., at 64:14-17.) However, the Complaint alleges that the "Plaintiff Class consists of all persons who will be prosecuted in Bronx Criminal Court with a misdemeanor or lesser offense as the top charge." (Compl. ¶ 24.)

standing (nor an identifiable class) on the basis of injuries inflicted by a chain of "unfettered choices made by independent actors not before the court," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013) (citing *Lujan*, 504 U.S. at 562), especially where Plaintiffs do not articulate an officially endorsed policy, a law, or practice, but rather, an omission—Defendants' failure to act to remedy Court Delay.

It is true that imminence "is concededly a somewhat elastic concept." *Clapper*, 133 S. Ct. at 1147 (internal citation and quotation marks omitted), and that as courts within this Circuit have noted, guidance from the United States Supreme Court as to "the question . . . of precisely '*how* imminent a threat must be in order to support standing'" under a fear-based theory, "'has been less than clear.'" *Tomsha v. Gen. Servs. Admin.*, No. 15-CV-7326, 2016 WL 3538380, at *2 (S.D.N.Y. June 21, 2016) (citing *Hedges v. Obama*, 724 F.3d 170, 195 (2d Cir. 2013)). However, as previously noted, where federal courts have found standing, the defendants engaged in targeted behavior that directly infringed upon plaintiffs' rights. *See, e.g.*, *Floyd*, 283 F.R.D. at 169-170 (finding plaintiffs had alleged facts supporting standing where they were subjected to allegedly unconstitutional practices while engaging in legal activity); *L.H. v. Schwarzenegger*, No. CIV. S-06-2042, 2007 WL 662463, at *6 (E.D. Cal. Feb. 28, 2007) (finding that "[p]arolees are, by definition, already subject to defendants' oversight and control . . . [and therefore] far more likely to experience recurrent injuries than are plaintiffs who have attempted to challenge practices that only randomly affect members of the general public"); *Deshawn E.*, 156 F.3d at 345 (finding standing where plaintiffs challenged an "official endorsed" interrogation policy that targeted plaintiffs).

Plaintiffs' theory of standing is closer to that rejected by the United States Supreme Court in *Clapper* because it "relies on a highly attenuated chain of possibilities and does not satisfy the

requirement that threatened injury must" have at least "a substantial risk" of occurring. *Clapper*,

133 S. Ct. at 1148, 1150 n.5 (rejecting a theory of standing that relied on a chain of several actions

of various United States government entities that might possibly lead to incidental interception of

plaintiffs' emails). The Court reasoned that it has been "reluctant to endorse standing theories that

require guesswork as to how independent decision[-]makers will exercise their judgment." *Id.* at

1150. Similarly, Plaintiffs' argument implies that the police would arrest them, and that the Bronx

District Attorney would decide to charge Plaintiffs with a misdemeanor crime and prosecute them.[9]

Plaintiffs' case would then be subject to the possibility of unreasonable trial delay. Thus, if

Plaintiffs choose to plead guilty because speedy trials are "illusory" or *de facto* unavailable, that

rationale is still primarily dependent on Plaintiffs' future conduct and decisions by police officers

and the District Attorney's office. *See id.*; *see also La Raza*, 468 F. Supp. 2d at 443 (holding that

fear or heightened risk of future contact between plaintiffs and defendants that would result in

alleged injury requiring two layers of independent decision-making was "too speculative and

conjectural" to supply standing for prospective relief).

Accordingly, a theory of standing to assert speedy trial violations based on Plaintiffs'

likelihood of future arrest and prosecution in Bronx Criminal Court on a misdemeanor charge is

overly reliant on a series of events that may or may not happen, and "such an accumulation of

---

[9] By claiming that they have no control over the circumstances that will inevitably lead to their violations of various criminal laws, Plaintiffs attempt to nullify another layer of independent decision-making and distinguish this scenario from that of *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974), where the Court assumed those plaintiffs would "conduct their activities within the law and so avoid prosecution . . . [and] exposure to the challenged course of conduct" for which Defendants are allegedly responsible. *Id.* Even if it were assumed that Plaintiffs did not have control over their conduct as they did in *O'Shea*, the alleged violation of speedy trial rights by Defendants is still too attenuated to rise to a substantial likelihood of future prosecution and trial delay for the reasons already stated. *See, e.g., Nat'l Council of La Raza v. Gonzales*, 468 F. Supp. 2d 429, 437-38 (E.D.N.Y. 2007) (requiring both a "tight connection between heightened risk of harm and intended goals of [an allegedly violated law]" and a "credible threat of harm").

inferences" remains too speculative and conjectural to support an actionable speedy trial violation. *See Shain*, 356 F.3d at 216.[10]

Defendants' Motion to Dismiss for lack of standing is GRANTED.

### III.   ABSTENTION

Defendants also request that this Court abstain from entertaining this action under the principles outlined in *O'Shea v. Littleton*, 414 U.S. 488 (1974).  (Mem., at 13-14.)  Defendants argue that principles of federalism, comity, and institutional competence are implicated such that this Court should be reluctant to grant relief that would entail heavy federal interference in the administration of the state judicial system.  (*See id.* at 13-16 (citing *Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015); *O'Shea*, 414 U.S. at 491-92; *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988))); *see Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006).

While district courts have discretion to decide whether to abstain to hear a case, "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation'" to exercise their existing jurisdiction, particularly when ensuring that constitutional rights are upheld. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,* 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation Dist. v. U.S*, 424 U.S. 800, 817 (1976)); *see Coolidge v. New Hampshire,* 403 U.S. 443, 454 (1971) ("It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.") (quoting *Boyd v. United States,* 116 U.S. 616, 635 (1886) (internal quotation marks omitted)); *Bank of Hamilton v. Dudley's Lessee,* 27 U.S. (2 Pet.) 492, 524 (1829) ("The judicial department of every government is the rightful expositor of its laws; and emphatically of its

---

[10] As Plaintiffs note, Defendants "do not dispute that the injuries alleged here are fairly traceable to their conduct, or that those injuries can be redressed by a favorable ruling" (the second and third requirements of standing); only the "injury-in-fact" element is contested. *See Lujan*, 504 U.S. 560-61; (Opp'n, at 5).

supreme law.")). Indeed, "[this] complaint plainly sets forth a case arising under the Constitution."

*Baker v. Carr*, 369 U.S. 186, 200 (1962). That federal courts decide whether there is a deprivation

of federal constitutional rights is "the very reason they exist." *Goldstein v. Pataki*, 488 F. Supp.

2d 254, 278 (E.D.N.Y. 2007), *aff'd*, 516 F.3d 50 (2d Cir. 2008).

> The speedy trial

> right alleged is as plainly federal in origin and nature as those vindicated in *Brown v. Board of Education*, 347 U.S. 483 (1954). Nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed. For [Plaintiffs] assert that [Defendants] have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether [Defendants'] conduct is legal or illegal as a matter of state law . . . Such claims are entitled to be adjudicated in the federal courts.

*McNeese v. Bd. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 (1963)

(citing, *inter alia*, *Monroe v. Pape*, 365 U.S. 167, 171-87 (1961), *overruled on other grounds by*

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 663 (1978)); *cf. Griffin v. Cty. Sch.*

*Bd. of Prince Edward Cty.*, 377 U.S. 218, 229 (1964) (holding that where resolution of school

desegregation is delayed for several years by resistance at the state and county level, "the

issues . . . imperatively call for decision now"); *N.Y. State Ass'n for Retarded Children, Inc. v.*

*Rockefeller*, 357 F. Supp. 752, 767 (E.D.N.Y. 1973) (declining to abstain "when practices by state

officials and employees alleged to violate plaintiffs' civil rights" were at issue). Indeed, the federal

constitutional right to a speedy trial predated New York State's speedy trial statute by almost two

hundred years. (*See* Compl. ¶¶ 108-116.)

Defendants' argument in favor of abstention, that Chief Judge DiFiore and others are

working toward a solution, (Tr., 46:16-45:20), is unavailing because as the United States Supreme

Court has held, even a "defendant's voluntary cessation of a challenged practice does not deprive

a federal court of its power to determine the legality of the practice. If it did, the courts would be

compelled to leave the defendant free to return to his old ways." *Friends of the Earth*, 528 U.S. at 189 (internal citation and quotation marks omitted).

Similarly, Defendants' argument that Plaintiffs could also bring speedy trial claims in state court, (Mem., at 18-20), does not necessarily require that this Court abstain, especially at this early stage in the litigation, where there has been little fact development. *See Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015) ("Naturally, whether *O'Shea* abstention applies is heavily fact-dependent.")

Therefore, because Defendants have not articulated compelling grounds for abstaining, this Court DENIES Defendants' request to abstain from adjudicating this action. This Court further notes that it could contemplate fashioning declaratory and injunctive relief that would not necessarily interfere with or restructure the state courts' lawful authority. Indeed, both sides agree that criminal defendants in misdemeanor cases have a right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. (*See e.g.*, Tr., 30:42-31:4). The State Court has the duty of ensuring the expeditious trial of criminal cases consistent with constitutional standards of due process.

## IV.   <u>**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

Defendants contend that the named Plaintiffs fail to state a claim for federal constitutional speedy trial violations under the *Barker v. Wingo*, 407 U.S. 514, 530 (1972), four-factor test. (*See* Mem., at 21.) A speedy trial inquiry requires a federal court to weigh: 1) the length of the delay; 2) the reason for the delay; 3) assertion of the right during the state criminal court proceeding; and 4) prejudice to the defendant. *See Barker*, 407 U.S. at 530. It is a balancing test of related factors that must be considered together with such other circumstances as may be relevant. *See id.* at 529-530.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, to state a facially plausible claim, *Iqbal* requires a party to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). For the purposes of a 12(b)(6) motion, the plaintiff's well-pleaded facts are assumed to be true and all reasonable inferences therefrom are construed in the light most favorable to the plaintiff, the non-moving party. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007)).

### A. Claims Against Chief Judge DiFiore and Chief Administrative Judge Marks

Defendants argue that under the *Barker* test, the Complaint "is wholly devoid of allegations showing that any of the Plaintiffs' speedy trial rights were violated in Bronx Criminal Court." (Mem., at 22.) Specifically, Defendants contend that the Complaint does not allege that 1) the durations of Plaintiffs' previous cases before the Bronx Criminal Court were unreasonable (*id.*); 2) Plaintiffs asserted constitutional speedy trial challenges during the duration of their state court cases, (*id.*, at 23); or 3) prejudice resulted from court delays. (*See id.*); *see also Barker*, 407 U.S. at 530.

Defendants' first contention—that Plaintiffs have not alleged any unreasonable trial delays—is plainly wrong. Plaintiff Torres alleges that 877 days had passed between his arraignment and the final resolution of his case. (*Id.* ¶¶ 65, 68.) During this time, he appeared for fourteen scheduled court dates, and ten of those were trial dates on which Torres' case did not

proceed to trial.  (*Id.*)  Similarly, Plaintiff Pagan alleges that 763 days passed between his arraignment and the ultimate resolution of his case by "adjournment in contemplation of dismissal" even though he had wanted to go to trial since his arraignment.  (*Id.* ¶¶ 76-77, 79.)  During those 763 days, he allegedly had eighteen court dates, sixteen of which were trial dates, and on eleven of those trial dates both parties were ready, but no Trial Parts were available.  (*Id.*)  On three other trial dates, the People requested adjournments because they were not ready.  (*Id.* ¶ 78.)

Two years of trial delay is twice the time of a maximum misdemeanor sentence, N.Y. Penal Law § 70.15, two-thirds of the maximum term of probation, *see* N.Y. Penal Law § 65.00, and four times the statutory time provided for speedy trials in felony cases.[11]  N.Y. Crim. Pro. L. § 30.30(a). Years of continuous delay in providing misdemeanor trials attributed not to the defendant, but solely to the lack of readiness of the prosecutor and/or the unavailability of courtrooms, judges, jurors, or other necessary court personnel, facilities, or equipment, is presumptively unreasonable. It is the State's responsibility to ensure that each person accused of a crime is provided a speedy trial consistent with federal constitutional guarantees.  Defendants urge this Court to ignore Plaintiffs' allegations because "[t]he Sixth Amendment does not require the state to bring a criminal defendant to trial within any specific time period," (Mem. at 21 (citing *Wallace v. Kern*, 499 F.2d 1345, 1349 (2d Cir. 1974)).  To adopt such reasoning would unacceptably weaken the

---

[11] New York law enumerating the right to a speedy trial provides statutory limits of ninety days for misdemeanors and six months for felonies. *See* N.Y. Crim. Pro. L. §§ 30.30(a-d); *see also United States v. Vispi*, 545 F.2d 328, 333 (2d Cir. 1976) (finding that twenty-month delay was "unduly long under the circumstances" for defendant accused of failure to file federal income tax returns); *United States v. Roberts*, 515 F.2d 642, 646 (2d Cir. 1975) (finding that sixteen months of delay was unreasonable); *see also United States v. Calloway*, 505 F.2d 311, 313 (D.C. Cir. 1974) (finding delay of fifteen months unreasonable); *People v. White*, 32 N.Y.2d 393, 398–99, (1973) (holding that four years constitutes unreasonable delay); *People v. White*, 11 Misc. 3d 1072(A), 816 N.Y.S.2d 699 (Dist. Ct. 2006) (finding 104 days delay by the People unreasonable); *People v. Coleman*, 47 A.D.2d 578, 579 (1975) (finding eight month delay unreasonable).

meaning of federal constitutional speedy trial rights. For the constitutional guarantee of the right to speedy trial to retain its meaning and utility, there must be some generally recognized point beyond which delays in misdemeanor proceedings are presumptively unreasonable. As the United States Supreme Court noted in *Barker v. Wingo*, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

Defendants' second argument for dismissal, that Plaintiffs did not avail themselves of existing state remedies, (Mem., at 23), is similarly unavailing. The United States Supreme Court has "previously indicated that relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy . . . 'It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.'" *McNeese*, 373 U.S. at 671 (quoting *Monroe v. Pape*, 365 U.S. 167, 183 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 663 (1978)).

Finally, contrary to Defendants' assertion, at least two Plaintiffs have alleged prejudice from Court Delay. The United States Supreme Court has acknowledged that, in the speedy trial context, "'prejudice' may take many forms." *U.S. v. Taylor*, 487 U.S. 341, 342 n.13 (1988). "[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Barker*, 407 U.S. at 533 (citing, *inter alia*, *Klopfer v. North Carolina*, 386 U.S. 213, 221-22 (1967)).

Plaintiff Torres alleges that the number of times he had to appear in court over the more than two years of the duration of his case resulted in lost wages and at least one construction job. (Compl., ¶¶ 69, 70.) Plaintiff Pagan also alleges despite his desire for a trial, he accepted a different

resolution of his case because of "the stress of having an open misdemeanor case" for 763 days. [12] (*Id.* ¶ 79.)   While courts may adjourn criminal matters even when a person's liberty and daily life are subject to negative changes, courts should not be permitted to adjourn misdemeanor proceedings in Bronx Criminal Court indefinitely and unnecessarily. *Cf. People ex rel. Maxian on Behalf of Roundtree v. Brown*, 561 N.Y.S.2d 418, 422 (1990), *aff'd*, 570 N.E.2d 223 (1991). Indeed, Plaintiffs have articulated the dire consequences of having to appear and defend a misdemeanor criminal charge over a period of years. (*See e.g.*, Compl. ¶¶ 64-70, 79, 132-133.)[13]

Defendants' Motion to Dismiss for failure to state a claim against Chief Judge DiFiore and Chief Administrative Judge Marks pursuant to Rule 12(b)(6) is DENIED.

### B. Governor Cuomo is Not a Proper Defendant

While this action is dismissed for lack of standing, Plaintiffs' complaint is also deficient in that it lacks sufficient factual allegations against Governor Andrew Cuomo. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (holding that a complaint that fails to allege an individual defendant's personal involvement in the alleged constitutional violation is "fatally defective on its face") (internal quotations and citation omitted); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (holding that to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). Their sole basis of liability against Governor Cuomo is an erroneous legal

---

[12] This Court also notes that Defendants appear to erroneously argue the factor-balancing test in *Barker* instead as a conjunctive elements test even though Defendants concede that "a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation." (Mem., at 23.)

[13] Defendants' purported requirement that individualized allegations are necessary to allege a violation of the speedy trial right is not particularly compelling. *Cf. Nicholson v. Williams*, 203 F. Supp. 2d 153, 240 (E.D.N.Y. 2002) (citing *Benjamin v. Fraser*, 264 F.3d 175 (2d Cir. 2001) ("But where the state imposes systemic barriers to effective representation, prospective injunctive relief without individualized proof of injury is necessary and appropriate.")).

conclusion that the Governor of the State of New York is "personally responsible for failing to provide the UCS with adequate funding." (Opp'n, at 25.)

Plaintiffs have not articulated any factual basis upon which Governor Cuomo could be held liable in his official capacity for Bronx Criminal Court Delay.  Even if Plaintiffs amended the Complaint to include a plaintiff with standing to represent a putative class, Plaintiffs cannot cure the defects in the Complaint with regard to budgetary allegations against Governor Cuomo.

Therefore, Governor Cuomo is DISMISSED as a defendant from this action.

## V.     **CONCLUSION**

Defendants' Motion to Dismiss each named Plaintiff's claims for lack of standing is GRANTED.

Defendants' Motion to Dismiss on abstention grounds is DENIED.

Defendants' Motion to Dismiss for failure to state a claim against Chief Judge Difiore and Chief Administrative Judge Marks pursuant to Rule 12(b)(6) is DENIED.

Governor Cuomo is DISMISSED as a defendant from this action.

Accordingly, Plaintiffs may move to file an amended Complaint within sixty days of this Order provided amendment would not be futile. [14]

---

[14] Where, as here, "there is a lack of Article III standing, 'Article III deprives federal courts of the power to dismiss a case with prejudice.'" *Hernandez v. Conriv Realty Associates,* 182 F.3d 121, 123 (2d Cir. 1999); *see also Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 54 (2d Cir. 2016) (holding same).

    This is not a case where the substitution of a named plaintiff "is intended to cure an action that a federal court otherwise could not have heard." *In re Ace Secs. Corp. RMBS Litig.*, Nos. 13-cv-1869, 13-cv-3687, 13-cv2053, 13-cv-2828, 2015 WL 1408837, at *7 (S.D.N.Y. March 26, 2015). The putative class allegations for violations of the Sixth Amendment right to a speedy trial remain the same. *See id.* This Circuit has permitted a class representative to continue as such even if his individual claims become moot. *See Madanat v. First Data Corp.*, 626 F. App'x 349, 352 (2d Cir. 2015) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 433 F.3d 181, 199 (2d Cir. 2005) (internal citation omitted)). Furthermore, any substitution of a named Plaintiff with standing would occur relatively early in the litigation. *See Precisions Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. CV-08-42, 2013 WL 6481195, at *7-*8 (E.D.N.Y. Sept. 20, 2013).

The Clerk of Court is directed to close the motion at ECF No. 29.

Dated: New York, New York
       December 21, 2016

SO ORDERED.

_George B. Daniels_

GEORGE B. DANIELS
United States District Judge